Of Counsel:

ROMAN AMAGUIN, ESQ. 6610-0
345 QUEEN STREET
Suite 504
Honolulu, Hawaii 96813

Telephone: (808) 545-4151
Facsimile: (888) 236-8984
Email: roman@amaguinlaw.com

Attorney for Plaintiff
REED SHOOK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REED SHOOK | ) CIV NO. _____ |
| | ) |
|    Plaintiff, | ) |
| | ) |
| | ) COMPLAINT; DEMAND FOR |
|    vs. | ) JURY TRIAL; SUMMONS |
| | ) |
| | ) |
| COUNTY OF HAWAII POLICE | ) |
| DEPARTMENT; CHIEF PAUL | ) |
| FERREIRA, in his Official | ) |
| Capacity; JASON GROUNS, | ) |
| Individually, | ) |
| | ) |
| | ) |
|    Defendants. | ) |
| _____ | ) |

## **NATURE OF THE ACTION AND JURISDICTION**

This is an action under the United States Constitution for the violation of constitutional rights made actionable pursuant to 42 U.S.C. § 1983, among other violations, by Defendants COUNTY OF HAWAII POLICE DEPARTMENT, and CHIEF PAUL FERREIRA, in his official capacity.

Plaintiff REED SHOOK asserts that Defendants unlawfully discriminated against and retaliated against Plaintiff under the United States Constitution, as follows:

## JURISDICTION AND VENUE

1.    This case arises under the Constitution of the United States of America, 42 U.S.C. §1983, and common law.

2.    The claims asserted herein are authorized by and present a question of federal law, thereby conferring jurisdiction upon the Court pursuant to 28 U.S.C. §§1331, 1343(3), 2201 and 2202, and 42 U.S.C. § 1983, *inter alia*.

3.    Any and all state law claims contained herein form part of the same case or controversy as gives rise to Plaintiff's federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.      Venue resides in the United States District Court for the District of Hawai'i pursuant to 28 U.S.C. § 1391(b), *inter alia*, as all of the events and/or omissions described herein occurred in the State of Hawaii.

5.      The request for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6.      Plaintiff is and was a U.S. citizen and resident of the County of Hawaii, State of Hawaii.

7.      Defendant COUNTY OF HAWAII POLICE DEPARTMENT (or "HPD") is and has been a duly organized municipal corporation of the State of Hawai'i at all times pertinent hereto.

8.      Defendant CHIEF PAUL FERREIRA is Chief of Police of the County of Hawaii Police Department.  In this capacity Defendant exercises administrative control of and has responsibility for the Hawaii Police Department and its employees.  He also is responsible for ensuring compliance with federal and state laws governing the Department.  Upon information and belief, Defendant is a citizen of the United States and a resident of the State of Hawaii.  He is sued in his official capacity.

3

9.    JASON GROUNS ("Grouns") is and/or was a police officer with the County of Hawaii Police Department.  Upon information and belief, Defendant is a citizen of the United States and a resident of the State of Hawaii.  He is currently not being named and/or sued in his official capacity and individually.

## OTHER SIGNIFICANT ACTOR

10.   VAN REYES is and/or was a police officer with the County of Hawaii Police Department.  Upon information and belief, Defendant is a citizen of the United States and a resident of the State of Hawaii.  He is currently not being named and/or sued in his official capacity and individually.

11.   The conduct of any individual defendant was done under color of state law.

12.   All of the acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, employee alter ego, indirect employer, joint employer or under the direction and control of the others, except as specifically alleged otherwise.

13.   Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated

4

in, approved and/or ratified the unlawful acts and omissions by the other Defendants complained of herein.

14.   Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

15.   Plaintiff asserts that all conditions required for filing suit have been satisfied.

## STATEMENT OF CLAIMS

16.   Plaintiff has aspirations to become a public servant, specifically a police officer.

17.   He earned a Bachelor of Arts degree in Marine Science at the University of Hawaii Hilo in 2014.

18.   He also received a Minor in History at the University of Hawaii Hilo in 2014.

19.   He has worked with the Office of Hawaiian affairs (OHA) as a Marine Scientist Contractor between 2014 and 2016 and is currently preparing for a law enforcement career by working at Kamehameha Schools on the Big Island as a Security Officer, since

August of 2018.

20.   On or around April 26, 2021, Plaintiff was informed by the County of Hawaii that his appeal before the Merit Appeals Board, County of Hawaii, to overturn the decision disqualifying Plaintiff from further training to become a police officer, was denied.

21.   Plaintiff had applied for admittance into the Hawaii Police Department ("HPD") around October 2, 2019, which was the subject of the appeal filed with the Merit Appeals Board.

22.   Plaintiff had participated in the physical/agility test for HPD on September 25, 2019, and had finished second out of a recruiting class of 150 in the physical/agility test.

23.   Plaintiff had also passed the written examination with an 80.16 score and was informed by HPD on October 2, 2019, that he had passed.

24.   On September 25, 2019, after finishing second out of 150 recruits in the physical/agility test, Plaintiff and the other recruits were instructed to report back to the Hilo police station where they completed the "Personal History Questionnaire ("PHQ").

25.   Plaintiff completed the PHQ as instructed and HPD set October 22, 2019, as the return date to review the PHQ with an

officer.

26.   The review was the next step in the process of becoming a police officer for the Hawaii Police Department.

27.   At the October 22, 2019, PHQ review, Plaintiff was instructed by an "Officer Van Reyes", to leave the room and follow Officer Reyes.

28.   Officer Van Reyes removed Plaintiff from the room, and he led Plaintiff to an office, separate and apart from all other officer/recruit reviews occurring.  Once they were both in the separate office, Officer Reyes shoved a form in front of Plaintiff.  The form was entitled, "Police Officer I Application Withdrawal from Eligible List."

29.   Plaintiff would not have known about the form and its title had Reyes not presented it to Plaintiff.

30.   The purpose of the PHQ review was to have the recruits review in detail the PHQ with an officer.  However, Officer Reyes did no such review and instead presented Plaintiff with the withdrawal form and told Plaintiff to sign it.

31.   Officer Reyes never reviewed the multi-page and extensive PHQ with Plaintiff, even though according to testimony by

7

Officer Van Reyes on December 16, 2020, at the Merit Appeals Board, Reyes claimed he did review the PHQ with Plaintiff.

32.   Officer Reyes' testimony at the December 16, 2020, Merit Appeals Board was fabricated and false.  Instead of reviewing the PHQ, Officer Reyes point-blank told Plaintiff he could not proceed any further, and by intimidation had Plaintiff leave the building.

33.   Officer Reyes shoved the withdrawal form in Plaintiff's face, and stated, "based on what I see, you will not get in."

34.   Among other comments, Officer Reyes told Plaintiff that he should "drop out" and that "just glancing at your paperwork the Chief won't accept your application."

35.   Plaintiff told Reyes that he wanted to submit his PHQ and other paperwork anyway.  When Plaintiff said he would not sign the form, Reyes remarked "okay, whatever" and went on to warn Plaintiff that, "fail once, fail for life."

36.   Plaintiff's testimony at the Merit Appeals Board on December 16, 2020, was specific as to his interaction with and statements made by Reyes, and the form Reyes tried to get Plaintiff to sign.  Plaintiff denied that the PHQ was ever reviewed with him by Reyes.

37.   On the other hand, Reyes claimed at the Merit Board Appeals hearing that he reviewed the PHQ with Plaintiff and discussed the specifics of a DUI arrest and conviction in March 2016 that Plaintiff stated in the PHQ had occurred years prior. However, such conviction had been overturned on January 30, 2018, and the arrest and conviction formally expunged on April, 4, 2019.

38.   Incredibly, Reyes claimed at the Merit Appeals Board hearing that when questioned specifically about the DUI on October 22, 2019, not once did Plaintiff tell Reyes that the conviction had been overturned and his record expunged.  If in fact Reyes did an actual PHQ review with Plaintiff in good faith, Plaintiff would have made clear as he did in the completed application of employment, that the conviction was overturned and "expunged."

39.   If one were to believe Officer Reyes' testimony that he reviewed the PHQ with Plaintiff, it makes no sense that Plaintiff, as part of the conversation, did not tell Reyes that the arrest/conviction was overturned/expunged, which was stated on Plaintiff's application for employment.

40.   After he was kicked out of the October 22, 2019, PHQ

9

review by Officer Reyes, Plaintiff immediately on that same date filed a complaint against Officer Reyes with the Human Resources office. The employee at Human Resources provided Plaintiff with a number to call and follow up on the complaint.

41. Reyes testified at the hearing on December 16, 2020, that he believed Plaintiff was ineligible due to a criminal conviction. Reyes testified he discussed the conviction with Plaintiff during the PHQ review, which is false. He also testified that he checked a database, which indicated that the conviction was still on record, which is also false.

42. Reyes also testified that after the PHQ review with Plaintiff, all of his paperwork went to Sgt. Grouns.

43. On October 24, 2019, Plaintiff and his father met with County Council member, Karen Eoff, to express their concerns over the behavior of Officer Reyes at the October 22nd PHQ review.

44. Council Member Eoff on October 24, 2019, ordered her own report and it came back "clean," consistent with Plaintiff's application for employment with HPD, which indicated that Plaintiff's conviction was overturned, and his record expunged.

45. On October 25, 2019, Plaintiff called the number

10

provided by Human Resources after Officer Reyes kicked him out of the PHQ.  On October 25, 2019, Plaintiff, with his father present during the conversation, spoke with Officer "Jason Grouns."

46.   Sgt. Grouns continued to claim at the time of the October 25, 2019, conversation that Plaintiff was disqualified from continuing his training, "due to your CJIS report," and that "police policy prevents anyone with a petty misdemeanor or higher" from being eligible for service for five years."   The "CJIS" report was obtained by Karen Eeof, which showed Plaintiff had no arrests/convictions.

47.   Sgt. Grouns, like Reyes, was apparently referring to the arrest and conviction for a DUI in 2016, that Officer Reyes used against Plaintiff.

48.   Up to that point Plaintiff satisfied every objective qualification to move forward past the application process.

49.   Plaintiff had an 80.16 score on the written test and scored second in the physical/agility test.  Plaintiff was qualified to move onto the "Personal History Questionnaire Review," and his CJIS report was "clean."

50.   Had Reyes and Grouns reviewed the PHQ with Plaintiff,

as they were supposed to, they would have known that Plaintiff was not disqualified from continuing the process.

51.    If they had only asked Plaintiff during the PHQ review, Plaintiff would have confirmed that while he had been arrested on March 19, 2016, for "Operating a Vehicle Under the Influence of an Intoxicant," HRS §291E-61(a)(1) and (3), Plaintiff appealed the November 9, 2016 conviction that had been entered by the District Court of the Third Circuit.

52.    They would have known that the conviction was overturned by the Hawai'i Intermediate Court of Appeals on January 30, 2018, and Plaintiff's record was expunged on April 4, 2019.

53.    Such information regarding expungement was contained in Plaintiff's application for employment with HPD, but simply ignored by Reyes and Grouns.

54.    Thus, Reyes and Grouns's representation, on October 22nd and October 25th, 2019, that Plaintiff was disqualified due to an arrest and/or conviction had no basis in fact.

55.    Hawaii law strictly prohibits any consideration of an arrest or court record as part of the process to become a police

12

officer.  HRS §378-2 states:

> §378-2 Discriminatory practices made unlawful; offenses
> defined. (a) It shall be an unlawful discriminatory practice:
>
> (1) Because of race, sex including gender identity or
> expression, sexual orientation, age, religion, color, ancestry,
> disability, marital status, **arrest and court record**, or
> domestic or sexual violence victim status if the domestic or
> sexual violence victim provides notice to the victim's employer
> of such status or the employer has actual knowledge of such
> status:
>
> (A) For any employer to refuse to hire or employ or to bar or
> discharge from employment, or otherwise to discriminate
> against any individual in compensation or in the terms,
> conditions, or privileges of employment[.]

HRS §378-2(a)(1)(A)(emphasis added).  §378-1 defines "arrest and

court record as including:

> Any information about an individual having been
> questioned, apprehended, taken into custody or
> detention, held for investigation, charged with an offense,
> served a summons, arrested with or without a warrant,
> tried, or convicted pursuant to any law enforcement or
> military authority.

HRS §378-1.  Plaintiff's record is clean with no arrests and

convictions for any crime.

      56.   When informed by Sgt, Grouns on October 25, 2019, of

the reason for Officer Reyes' statements that he should withdraw,

Plaintiff immediately protested that his conviction was overturned

by a higher court and his record expunged.

57.   Plaintiff informed Sgt. Grouns he would be filing a complaint and Grouns then hung up the phone ending the October 25, 2019, conversation.

58.   What followed is that HPD attempted to cover up its wrongful act.

59.   On or around December 20, 2019, in written correspondence from Sgt. Grouns to Police Chief Ferrira, as part of the cover-up, Grouns claimed that Plaintiff's references were unsatisfactory and alleged that he attempted, but could not contact, one of the references, "Matthew R. Sapanara."

60.   The December 20, 2019, correspondence was sent nearly two months after Sgt. Grouns, on October 25, 2019, had illegally used arrest/conviction information to justify Officer Reyes' behavior towards Plaintiff at the October 22, 2019, PHQ review.

61.   Sapanera is a former intelligence analyst for the Kona vice section of HPD.  Contrary to Grouns' allegation that he was unable to interview Sapanera, Sapanera did in fact speak with Grouns for around ten minutes when contacted by Grouns for an interview, and Sapanera gave Plaintiff a good recommendation.

14

62.   There is no indication in the report submitted to Police Chief Ferreira as to why Sgt. Grouns would omit his conversation with Sapanera, and therefore questions arise whether the remaining information regarding Plaintiff's references was falsified to justify disqualification under a new reason—unsatisfactory references.

63.   On February 3, 2020, HPD, specifically Captain Aimee Wana, formally informed Plaintiff that he was no longer eligible to participate in the 92nd class of police recruits.  Plaintiff spoke with Wana and asked for a reason he could not continue.  Wana informed Plaintiff she would call him back.  Apparently in a scramble to get HPD's story straight, Wana never contacted Plaintiff, despite his attempt to reach her a second time.

64.   On March 9, 2020, Plaintiff filed a "Complaint of Misconduct Against Officers or Employees" and named Officer Reyes, and Sgt. Grouns as officers that committed misconduct.

65.   On or around July 7, 2019, Plaintiff filed an "Internal Complaint Form" stating that he was unable to complete the 92nd police recruitment class due to an "Abuse of Power."

66.   Plaintiff appealed the decision denying him relief and a hearing before the Merit Appeals Board was conducted on

15

December 16, 2020, where both Sgt. Grouns and Officer Reyes testified.

67.   At the hearing, HPD's testimony was completely incredulous.  Officer Reyes claimed he never even made a recommendation regarding Plaintiff's eligibility, despite the statements Reyes made to and actions towards Plaintiff at the PHQ review, which indicated Reyes was motivated to deny Plaintiff an opportunity to proceed in the process to become an officer by a non-existent arrest and conviction record.

68.   At the hearing, Sgt. Grouns denied referencing Plaintiff's arrest/conviction record in a call with Plaintiff, even though Grouns had expressly stated to Plaintiff during the October 25th telephone conversation, with Plaintiff's father present, that Plaintiff's DUI conviction meant he had to wait five years and apply again.

69.   Furthermore, Sgt. Grouns, during the October 25th telephone conversation, would have no other reason to inform Plaintiff that he was disqualified, other than the purported conviction, as reference interviews were not even conducted until December 2019.

70.   Sgt. Grouns' claim at the Merit Appeal Board hearing

16

that interviews of references conducted in December 2019, justified disqualifying Plaintiff from further training, lacked credibility also because there are stark discrepancies between his alleged interviews and the facts.

71.   Police Chief Ferreira testified at the Merit Appeal Board hearing that he agreed with Sgt. Grouns' recommendation and that he, Ferreira, did not consider anything else other than the interviews, despite Sgt. Grouns' misrepresentation that Mr. Sapanera was not interviewed.

72.   On April 26, 2021, Plaintiff received the decision that his appeal to the Merit Appeals Board was denied.

73.   There is strong evidence that Plaintiff's arrest and court record, which were expunged prior to his submitting his application for employment, was illegally considered and used in disqualifying Plaintiff from further participation in HPD training.

74.   Further, it appears that there is a system of corruption that predominates the process of becoming a police officer with the HPD.  Four failed candidates from the previous class of recruits (91st) were allowed into the next (Plaintiff's) training class (92nd) in violation of regulations and procedures.

17

75.    Thus, similarly-situated applicants, at least four failed candidates from the 91st class that were allowed into the 92nd class, were treated better than Plaintiff.

76.    As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, and mental and physical anguish all to his damage in an amount to be proven at trial.

77.    Plaintiff is entitled to damages from Defendants.

78.    Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living.

79.    Therefore, Plaintiff is also entitled to punitive and exemplary damages from Defendants in an amount to be proven at trial.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

## 42 U.S.C. § 1983

80.    Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in

paragraphs 1 through 79, above.

81.   In doing the acts complained of herein, the individual defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to, the right to report and complain about evidence of illegal conduct or the violation of rights protected by the First Amendment to the Constitution.

82.   Plaintiff's exercise of his right to speak on matters of public concern was a substantial or motivating factor for Defendants' wrongful actions and conduct, and there is no question that Defendants, and/or each of them, would not have taken the actions set forth herein except to retaliate and punish Plaintiff for his exercise of First Amendment rights.

83.   Plaintiff was subject to retaliatory treatment by Defendants as herein alleged because of the reports he made of allegedly illegal conduct by HPD

84.   Plaintiff has been damaged because of the loss of wages, loss of future earning capacity, fringe benefits and other employment opportunities, all to his damage in a sum according to proof at trial.

85.   As a further result of the above-described wrongful conduct of the Defendants, and each of them, Plaintiff has suffered humiliation, mental anguish, injury to reputation, loss of income and benefits, and emotional distress, all to his general damages in a sum according to proof at trial.

86.   The above-described actions of the Defendants, and each of them, were done with malice, fraud and oppression, so as to justify an award of punitive and exemplary damages.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

87.   Plaintiff realleges and incorporates by reference as though fully contained herein, the allegations set forth in paragraphs 1 through 86, above.

88.   Defendants' conduct, as herein alleged, breached the duty of due care owed to Plaintiff and was done negligently.

89.   As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, embarrassment, damage to his reputation, and mental and physical anguish all to his damage in an amount to be proven at trial.

90.   Plaintiff is entitled to damages from Defendants in an amount to be proven at trial.

91.   Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living and therefore Plaintiff is also entitled to punitive and exemplary damages from Defendants in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

92.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1-91 above, as if fully set forth herein.

93.   Defendants' conduct was outrageous and was intended to cause and did cause Plaintiff severe emotional distress.

94.   Defendants' conduct was unreasonable.

95.   Defendants knew, or in the exercise of reasonable diligence, should have known that their conduct would cause illness and harm to Plaintiff.

96.   As a direct, foreseeable and proximate result of Defendants' outrageous conduct as alleged herein, Plaintiff suffered and will suffer damages, including emotional distress, in an amount

to be proven at trial.

97.   Defendant each acted intentionally, willfully, wantonly, oppressively, and/or with such malice as to imply a spirt of mischief or criminal indifference to civil obligation and/or with willful misconduct and/or that entire want of care which would raise a presumption of conscious indifference to the consequence of their conduct.

## FOURTH CLAIM FOR RELIEF

## DISCRIMINATION BASED ON ARREST AND COURT RECORD

98.   Plaintiff realleges and incorporates the allegations contained in Paragraphs 1-97 above, as if fully set forth herein.

99.   Hawaii law prohibits any consideration of an applicant's arrest or court record as part of the process to become an employee. HRS §378-2 states:

§378-2 Discriminatory practices made unlawful; offenses defined. (a) It shall be an unlawful discriminatory practice:

(1) Because of race, sex including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, **arrest and court record**, or domestic or sexual violence victim status if the domestic or sexual violence victim provides notice to the victim's employer of such status or the employer has actual knowledge of such status:

(A) For any employer to **refuse to hire or employ or to bar** or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

HRS §378-2(a)(1)(A)(emphasis added).  §378-1 defines "arrest and court record as including:

Any information about an individual having been questioned, apprehended, taken into custody or detention, held for investigation, charged with an offense, served a summons, arrested with or without a warrant, tried, or convicted pursuant to any law enforcement or military authority.

HRS §378-1.  Plaintiff's updated record is clean with no arrests and convictions for any crime.

100. HPD, Reyes and Grouns took illegal action against Plaintiff in the application process to become a police officer by using an arrest and court record that was overturned by the Hawaii Intermediate Court of Appeals to render Plaintiff ineligible in October 2019, to become a police officer.

101. When they discovered they erred in using such information, Defendants, specifically Sgt. Grouns, attempted to cover up their illegal action by claiming Plaintiff was ineligible to become a police officer due to "reference" interviews that occurred in December 2019.

102. There is no credibility in such after-the-fact explanation. Grouns claimed that one of Plaintiff's references, "Matthew R. Sapanara," could not be reached.  Sapanera is a former intelligence analyst for the Kona vice section of HPD.  Contrary to Grouns' allegation that he was unable to interview Sapanera, Sapanera had the interview and gave Plaintiff a good recommendation for hire.

103. Similarly-situated applicants/employees were treated better than Plaintiff.  Several applicants ineligible from the previous class were called back into Plaintiff's class and replaced at least Plaintiff, against HPD policies/procedures.

104. As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer job insecurity, loss of earnings and benefits, humiliation, emotional distress, embarrassment, damage to his reputation, and mental and physical anguish all to his damage in an amount to be proven at trial.

105. Plaintiff is entitled to damages from Defendants in an amount to be proven at trial.

106. Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living and therefore

Plaintiff is also entitled to punitive and exemplary damages from Defendants in an amount to be proven at trial.

## PRAYER FOR RELIEF

107. Plaintiff is entitled to damages from Defendants.

108. Defendants' acts and/or omissions were willful, wanton, outrageous and oppressive and were done with callous indifference to Plaintiff's present and future ability to earn a living; and, therefore Plaintiff is also entitled to punitive and other damages, to the extent permitted by law, and exemplary damages from Defendants.

Wherefore, Plaintiff prays this Court grant judgment in his favor over and against Defendants and award damages to Plaintiff, including special damages, back pay and future loss of earnings, compensatory damages, attorneys' fees, prejudgment interest, and to the extent permitted by law punitive damages in an amount deemed sufficient to punish Defendants for their actions; costs of this action; and such other and further relief as this Court may deem just and proper.

DATED:  Honolulu, Hawai`i, February 9, 2022.

/s/ Roman Amaguin

_____

ROMAN F. AMAGUIN
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REED SHOOK | ) CIV NO. _____ |
| | ) |
|    Plaintiff, | ) |
| | ) |
| | ) DEMAND FOR JURY TRIAL |
|    vs. | ) |
| | ) |
| | ) |
| COUNTY OF HAWAII POLICE | ) |
| DEPARTMENT; CHIEF PAUL | ) |
| FERREIRA, in his Official | ) |
| Capacity, JASON GROUNS, | ) |
| Individually | ) |
| | ) |
| | ) |
| | ) |
|    Defendants. | ) |
| _____ | ) |

## **<u>JURY TRIAL DEMAND</u>**

Plaintiff, by and through his undersigned counsel, hereby

demands a trial by jury as to all issues so triable herein.

DATED:  Honolulu, Hawaii, February 9, 2022

/S/ Roman Amaguin

_____

ROMAN F. AMAGUIN
Attorney for Plaintiff