UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| REED SHOOK,<br><br>               Plaintiff,<br><br>   vs.<br><br>COUNTY OF HAWAII POLICE<br>DEPARTMENT, CHIEF PAUL<br>FERREIRA, IN HIS OFFICIAL<br>CAPACITY; AND JASON GROUNS,<br>INDIVIDUALLY;<br><br>             Defendants. | CIV. NO. 22-00060 LEK-KJM |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

On April 28, 2022, Defendants County of Hawai`i Police Department ("HPD"), Chief Paul Ferreira, in his official capacity ("Ferreira"), and Jason Grouns, individually ("Grouns" and collectively "Defendants") filed their Motion to Dismiss ("Motion"). [Dkt. no. 15.] Plaintiff Reed Shook ("Plaintiff" or "Shook") filed his memorandum in opposition on May 13, 2022, and Defendants filed their reply on May 20, 2022. [Dkt. nos. 19, 20.] This matter came on for hearing on June 3, 2022. Defendants' Motion is hereby granted for the reasons set forth below.

**BACKGROUND**

Shook initiated this action on February 9, 2022. See Complaint, filed 2/9/22 (dkt. no. 1). According to the

Complaint, in the fall of 2019, Shook was part of the HPD recruiting class.  He completed the physical/agility test and the written examination, as well as a Personal History Questionnaire ("PHQ").  October 22, 2019 was the scheduled date for recruits to review their PHQ's with an HPD officer. [Complaint at ¶¶ 21-25.]  On that date, Officer Van Reyes ("Reyes") took Shook to another office, separating Shook from the rest of the recruit class.  Reyes did not review Shook's PHQ with him, and instead gave Shook a form to sign, withdrawing Shook's application.  [Id. at ¶¶ 27-28.]  Reyes advised Shook to withdraw because Reyes believed that, based on his review, Shook's application would not be accepted.  Shook declined to sign the form and informed Reyes that he wanted to submit his application paperwork.  Reyes advised Shook that failure to graduate from the recruit class would mean that Shook would not be able to apply to HPD again.  [Id. at ¶¶ 33-35.]

Later on October 22, 2019, Shook made a complaint against Reyes with the HPD human resources ("HR") office, and Shook was given a telephone number to call to follow up about the complaint.  [Id. at ¶ 40.]  On October 24, 2019, Shook and his father met with County of Hawai`i Council Member Karen Eoff to express their concerns about Reyes's actions.  [Id. at ¶ 43.]

On October 25, 2019, Shook called the number that the HR office gave him, and he spoke to Grouns, who said Shook was

disqualified from police officer training because Shook had a
criminal record, and HPD policy rendered ineligible for service
anyone who was convicted of a petty misdemeanor or higher
offense.  [Id. at ¶¶ 45-46.]  Shook assumed Grouns was referring
to Shook's March 19, 2016 arrest and November 9, 2016 conviction
for operating a vehicle under the influence of an intoxicant
("DUI"), and Shook assumed Reyes also relied on the arrest and
conviction.  [Id. at ¶¶ 47, 51.]  However, on January 30, 2018,
the Hawai`i Intermediate Court of Appeals overturned the
conviction on appeal, and Shook's record was expunged on
April 4, 2019.  [Id. at ¶ 52.]

        During the October 25, 2019 telephone call, Grouns
informed Shook that the DUI conviction was the reason for
Reyes's statement that Shook should withdraw his HPD
application.  Shook protested that the conviction had been
overturned and his record expunged.  [Id. at ¶ 56.]  According
to Shook, his HPD application included information about the
expungement of his criminal record, but Reyes and Grounds
ignored the information.  He also asserts Reyes's and Grouns's
stated reasons for his disqualification were groundless.  [Id.
at ¶¶ 53-54.]  Shook argues HPD attempted to cover up his
wrongful disqualification from the recruit class, as evidenced
by the fact that Grouns claimed in a December 20, 2019
correspondence to Ferreira that Shook's references were

3

unsatisfactory and falsely stated that Grouns could not contact one of Shook's references, Matthew R. Sapanara ("Sapanara"). [Id. at ¶¶ 58-61.]

On February 3, 2020, HPD Captain Aimee Wana ("Wana") formally notified Shook that he was ineligible to continue his participation in the ninety-second HPD recruit class.  Shook asked Wana why he was ineligible, and she told him she would call him back, but she never did so.  [Id. at ¶ 63.]

On March 9, 2020, Shook filed a misconduct complaint against Reyes and Grouns, and on July 7, 2020, he filed an internal complaint, alleging he was excluded from the ninety-second recruit class because of an abuse of power.  [Id. at ¶¶ 64-65.[1]]  Shook's complaints were denied, and he appealed the decision to the Merit Appeals Board ("MAB"), which held a hearing on December 16, 2020.  Grouns, Reyes, and Ferreira testified at the hearing.  [Id. at ¶¶ 66, 71.]  According to Shook, both Grouns and Reyes gave false testimony at the hearing.  [Id. at ¶¶ 67-68.]  Shook contends his allegedly unsatisfactory references could not have been the basis for the attempt to coerce him into withdrawing from the recruit class in October 2019 because the recruits' references were not interviewed until December 2019.  Grouns testified that Shook

---

[1] Paragraph 65 states he filed the complaint on July 7, 2019, but that appears to be a typographical error.

was disqualified after the reference interviews in December
2019. [Id. at ¶¶ 69-70.] Ferreira testified that he agreed
with Grouns's recommendation and that he only considered
Grouns's recommendation and the reference interviews. [Id. at
¶ 71.] The MAB denied Shook's appeal, and he received the
decision ("MAB Decision") on April 26, 2021. [Id. at ¶ 72.]

Shook argues his expunged arrest and court record were
illegally considered and used to disqualify him from the ninety-
second HPD recruit class. Shook also argues he was
discriminated against because four recruits who failed in the
ninety-first recruit class were allowed into the ninety-second
recruit class, and therefore those four recruits were persons
who were similarly situated to him who received better treatment
than he did. [Id. at ¶¶ 73-75.]

Shook alleges the following claims: a claim under 42
U.S.C. § 1983, alleging Defendants violated his First Amendment
rights by retaliating against him after he made reports about
HPD's illegal conduct ("Count I"); negligence ("Count II");
intentional infliction of emotional distress ("IIED" and
"Count III"); and a Haw. Rev. Stat. § 378-2(a)(1)(A) claim
alleging he was discriminated against based his arrest and court
record ("Count IV"). In the instant Motion, Defendants seek
dismissal of all of Shook's claims because they are barred by

the statute of limitations and because they are barred by the
res judicata doctrine.

**DISCUSSION**

I.   **Applicable Statutes of Limitations**

    A.   **Shook's § 1983 Claim**

Shook's § 1983 claim is governed by the Hawai'i
statute of limitations for personal injury actions.  See Nance
v. Ward, 142 S. Ct. 2214, 2225 (2022).  The Hawai'i statute of
limitations for personal injury actions is two years.  Haw. Rev.
Stat. § 657-7.  State tolling statutes are also applied to
§ 1983 claims, see Artis v. Dist. of Columbia, 138 S. Ct. 594,
603 (2018), as are equitable tolling rules, "except to the
extent any of these laws is inconsistent with federal law[,]"
Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1198
(9th Cir. 2014) (quotation marks and citations omitted).
However, "the time at which a § 1983 claim accrues is a question
of federal law, conforming in general to common-law tort
principles."  McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019)
(citation and internal quotation marks omitted).  The Ninth
Circuit has "applied the traditional accrual rule to § 1983
claims alleging First Amendment violations, including First
Amendment retaliation."  Bonelli v. Grand Canyon Univ., 28 F.4th
948, 952 (9th Cir. 2022) (some citations omitted) (citing
Canatella v. Van De Kamp, 486 F.3d 1128, 1133-34 (9th Cir. 2007)

(explaining that a First Amendment claim accrued at the time of the alleged injury)).

### B.   **IIED and Negligence Claims**

Shook's IIED claim and negligence claim are also subject to the § 657-7 two-year statute of limitations.  See Ohana Control Sys., Inc. v. City & Cnty. of Honolulu, CIVIL NO. 21-00345 JAO-KJM, 2021 WL 5890659, at *6 (D. Hawai`i Dec. 13, 2021) (IIED); Ritchey v. Rando, CIV. NO. 21-00259 LEK-KJM, 2021 WL 4301481, at *5 (D. Hawai`i Sept. 21, 2021) (negligence).  The discovery rule applies to the § 657-7 statute of limitations, and therefore the limitations period "does not begin to run, until the plaintiff knew or should have known of the defendant's negligence."  Ohana Control Sys., 2021 WL 5890659, at *6 n.4 (quoting Aana v. Pioneer Hi-Bred Int'l, Inc., 965 F. Supp. 2d 1157, 1179 (D. Haw. 2013) (quoting Hays v. City & County of Honolulu, 81 Hawai`i 391, 393, 917 P.2d 718, 720 (1996))).

### C.   **Section 378-2 Claim**

Haw. Rev. Stat. § 378-2 states, in relevant part:

(a)  It shall be an unlawful discriminatory practice:

> (1)  Because of . . . arrest and court record . . . :
>
> > (A) For any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to

> > discriminate against any individual in
> > compensation or in the terms,
> > conditions, or privileges of
> > employment[.]

This district court has stated:

> > A claimant under Section 378-2 must file a
> > complaint with the HCRC within 180 days of the
> > unlawful discriminatory practice or the last
> > occurrence of a pattern of ongoing
> > discrimination, see Haw. Rev. Stat. § 368-11(c),
> > and then file a lawsuit in court within ninety
> > days of receiving a right-to-sue notice.  Id.
> > § 368-12; Ross [v. Stouffer Hotel Co.], 879 P.2d
> > [1037,] 1043 [(Hawai`i 1994)].

Jass v. CherryRoad Techs., Inc., 449 F. Supp. 3d 923, 934–35 (D. Hawai`i 2020).

## II.  **Whether Shook's Claims Are Timely**

The crux of Shook's claims is that he was wrongfully excused from the ninety-second HPD recruit class.  Shook was formally notified on February 3, 2020 of his disqualification from the class.  See Complaint at ¶ 63.  Shook's factual allegations are assumed to be true for purposes of the instant Motion.  See In re Nektar Therapeutics Sec. Litig., 34 F.4th 828, 835 (9th Cir. 2022) (stating a district court's dismissal of a complaint is reviewed de novo and all of the complaint's "well-pleaded allegations" are assumed to be true (citation omitted)).

Although he was not informed of the reason for the disqualification at that time, Shook's allegations about the

events prior to the formal notification make it clear that he knew or should have known about the basis for his current claims by the time of his formal disqualification.

On October 22, 2019, Reyes allegedly attempted to intimidate Shook into withdrawing his application for the ninety-second HPD recruit class, but Shook responded that he wanted to continue in the application process.  See Complaint at ¶¶ 27-30, 32-35.  Reyes cited Shook's prior arrest and/or conviction.  See id. at ¶ 54 (alleging Reyes represented "on October 22nd . . . that Plaintiff was disqualified due to an arrest and/or conviction").  It is clear that Shook immediately suspected that Reyes's conduct was wrongful because Shook made an October 22, 2019 complaint to HR against Reyes and he had an October 24, 2019 meeting with Council Member Karen Eoff to discuss Reyes's conduct.  See id. at ¶¶ 40, 43.  Further, during an October 25, 2019 telephone conversation, Grouns informed Shook that he was disqualified based on his "'CJIS report'" and police policy.  See id. at ¶ 46.  It is clear that Shook suspected this was improper because, during that conversation, Shook "immediately protested that his conviction was overturned by a higher court and his record expunged," and he informed Grouns of his intent to file a complaint.  See id. at ¶¶ 56-57.

9

A.    <u>**Claims Based on Shook's Disqualification**</u>

1.    <u>**Section 1983 Claim**</u>

To the extent that Shook's § 1983 First Amended retaliation claim is based on Shook's disqualification from the ninety-second HPD recruit class, his injury occurred by no later than February 3, 2020, when he was formally notified of his disqualification.  <u>See</u> Complaint at ¶ 63.  Thus, Shook's § 1983 claim alleging that he was disqualified in retaliation for exercising his First Amendment rights accrued by no later than February 3, 2020.  <u>See</u> <u>Bonelli</u>, 28 F.4th at 952.  Because Shook filed this action more than two years after that date, his § 1983 claim based on his disqualification is time-barred and must be dismissed because it fails to state a plausible claim for relief.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

2.    <u>**Negligence and IIED Claims**</u>

The portions of Shook's negligence claim and IIED claim based on his disqualification accrued when he knew or should have known about the basis for those claims.  <u>See</u> <u>Ohana Control Sys.</u>, 2021 WL 5890659, at *6 n.4.  Under Hawai`i law, a claim accrues under the discovery rule "when [the] plaintiff

10

discovers, or through the use of reasonable diligence should have discovered, (1) the damage; (2) the violation of the duty; and (3) the causal connection between the violation of the duty and the damage." Hays, 81 Hawai`i at 396, 917 P.2d at 723 (citation omitted).  By the time of the February 3, 2020 formal notification of his disqualification, Shook knew, or with reasonable diligence should have known, about: 1) his injury - his disqualification from the ninety-second HPD recruit class and resulting losses from the inability to obtain employment as an HPD officer; 2) the allegedly improper conduct - the consideration of his expunged prior arrest and overturned conviction; and 3) the causal connection between the two - his prior arrest and conviction was at least one of the reasons that led to his disqualification.

Shook also alleges events which occurred after the formal notification of his disqualification extended the statute of limitations for his negligence and IIED claims based on his disqualification.  On March 9, 2020 and July 7, 2020, Shook filed internal complaints related to his disqualification from the ninety-second recruit class.  See Complaint at ¶¶ 64-65.  At some point, these complaints were denied, and Shook appealed the decision to the MAB.  The MAB held a hearing on December 16, 2020, and on April 26, 2021, Shook received the MAB's decision denying his appeal.  See id. at ¶¶ 66, 72.  While Shook may have

11

learned, during the MAB hearing and from the MAB's decision, about facts that provided **additional support** for his negligence claim and his IIED claim, by February 3, 2020, Shook had all of the **necessary facts** to support his claims.  See N.K. Collins, LLC v. William Grant & Sons, Inc., 472 F. Supp. 3d 806, 841 (D. Hawai`i 2020) ("Hawaii law makes clear that, under the discovery rule, limitations periods begin to run when a plaintiff has knowledge of all facts supporting her claim . . . ." (citing Hays v. City & Cty. of Honolulu, 81 Haw. 391, 398, 917 P.2d 718, 725 (1996))).  This Court therefore rejects Shook's argument that he did not discover the basis for his negligence claim and IIED claim based on his disqualification until either the MAB hearing or the MAB decision.

Shook also argues the MAB hearing and the MAB decision are part of a continuing violation with the formal disqualification notice and the events leading up to it.  In the context of unfair and deceptive acts or practices ("UDAP") claims, this Court has stated:

> In determining whether the continuing violation doctrine applies,
>
> > "[t]he key is whether the conduct complaint of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts."  [Joseph v. J.J. Mac Intyre Cos., LLC, 281 F. Supp. 2d 1156, 1158-59 (N.D. Cal. 2003).]  The court focused on the pattern of the defendant's harassing conduct, and found a continuing violation

12

because "claims of a pattern of debtor harassment consisting of a series of calls cannot be said to occur on any particular day." Id. at 1161 (internal quotations marks omitted) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002)). In other words, "[i]t occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own terms." Morgan, 536 U.S. at 115, 122 S. Ct. at 2073.

[Lowther v. U.S. Bank N.A., 971 F. Supp. 989,] 1009 [(D. Hawai`i 2013)] (some alterations in Lowther). Further,

UDAP claims are subject to tolling based on fraudulent concealment. See, e.g., Galima v. Ass'n of Apartment Owners of Palm Court ex rel. Bd. of Dirs., CIVIL 16-00023 LEK-KSC, 2018 WL 6841818, at *11 (D. Hawai`i Dec. 31, 2018) ("Galima 12/31/18 Order"), recon. denied, 2019 WL 1102188 (Mar. 8, 2019) . . . .[2]

"A statute of limitations may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012) . . . .

Galima v. Ass'n of Apartment Owners of Palm Court ex rel. Bd. of Dirs., CIVIL 16-00023 LEK-KSC, 2017 WL 1240181, at *16 (D. Hawai`i Mar. 30, 2017) ("Galima 3/30/17 Order") (some alterations in Galima 3/30/17 Order).

[Chavez v. Deutsche Bank Nat'l Tr. Co., CIV. NO. 17-00446 LEK-RT], 2019 WL 2330885, at *9 [(D.

---

[2] The Galima 12/31/18 Order was subsequently reconsidered in part on other grounds. See 2020 WL 5735124 (Sept. 24, 2020).

> Hawai`i May 31, 2019)] (alterations in 5/31/19
> Order).

Chavez v. Deutsche Bank Nat'l Tr. Co., CIV. NO. 17-00446 LEK-RT, 2020 WL 7038589, at *15 (D. Hawai`i Nov. 30, 2020) (some alterations in Chavez), *reconsideration denied*, 2021 WL 1256897 (Mar. 24, 2021), and *aff'd*, No. 21-15599, 2022 WL 542558 (9th Cir. Feb. 23, 2022).

First, the decision that Shook received on April 26, 2021 is not a part of a continuing violation because it was not issued by Defendants. As to the December 16, 2020 MAB hearing, Shook alleges Reyes gave false testimony, see, e.g., Complaint at ¶¶ 37-38, 41, as did Grouns, see, e.g., id. at ¶ 68. Their allegedly false testimony during the MAB hearing was not part of a "repeated pattern and course of conduct," and is discrete from their actions that contributed to the employment decision that was the subject of the MAB hearing. Cf. Lowther, 971 F. Supp. 2d at 1009 ("Plaintiff has not alleged facts to support a claim of Defendant's repeated pattern and course of conduct with respect to its alleged forgery of the Assignment. Although the foreclosure sale followed the alleged forged Assignment, it is not part of a continuing violation; at most it is a discrete act." (citation omitted)), *aff'd in part sub nom.* Lowther v. U.S. Bank, 702 F. App'x 517 (9th Cir. 2017). This Court therefore rejects Shook's continuing violation argument.

This Court also rejects Shook's fraudulent concealment argument.  As previously stated, although Shook learned more information about the events that led to his disqualification from the ninety-second HPD recruit class, he was aware of the disqualification, and he had enough information to suspect that the disqualification was wrongful and that it was the result of the conduct of one or more of Defendants.  There is no factual allegation in the Complaint suggesting the existence of Shook's claims were fraudulently concealed from him.

Shook's negligence and IIED claims based on his disqualification accrued by no later than February 3, 2020. Because Shook did not file this action until more than two years after that date, those claims are time-barred and must be dismissed.

### 3.   **Section 378-2 Claim**

Defendants argue Shook's § 378-2 claim based on his disqualification must be dismissed because his complaint to the Hawai`i Civil Rights Commission ("HCRC") was untimely.  See Mem. in Supp. of Motion at 3; see also Motion, Decl. of Counsel (by Ryan K. Thomas ("Thomas Decl.")), Exh. B (letter dated 10/26/21 to the County of Hawai`i Corporation Counsel from the HCRC Executive Director, transmitting Shook's Pre-Complaint Questionnaire – Employment and the Declaration of Reed Shook for His Charge of Discrimination).  Defendants ask this Court to

take judicial notice of the HCRC documents, and they argue that
taking judicial notice would not convert the instant Motion into
a motion for summary judgment.

> The court may "take judicial notice of
> 'matters of public record[,]'" as long as the
> facts noticed are not "subject to reasonable
> dispute." Intri-Plex Techs., Inc. v. Crest Grp.,
> Inc., 499 F.3d 1048, 1052 (9th Cir. 2007).
> However, the court may not take judicial notice
> of a matter of public record in order to consider
> "the truth of the facts recited therein." See
> [Lee v. City of Los Angeles, 250 F.3d 668,] 690
> [(9th Cir. 2001)]. The court may only take
> judicial notice of the existence of the matter.
> See id. (citing S. Cross Overseas Agencies, Inc.
> v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410,
> 426-27 (3d Cir. 1999)).
>
> Matters of public record that may be
> judicially noticed include records and reports of
> administrative bodies, see Barron v. Reich, 13
> F.3d 1370, 1377 (9th Cir. 1994), and documents
> filed with courts, "both within and without the
> federal judicial system, if those proceedings
> have a direct relation to the matters at issue."
> United States v. Borneo, Inc., 971 F.2d 244, 248
> (9th Cir. 1992). The court may also take
> judicial notice of records of government
> agencies. See Dent v. Holder, 627 F.3d 365, 371-
> 72 (9th Cir. 2010) (taking judicial notice of
> agency records).

Bartolotti v. Maui Mem'l Med. Ctr., Civil No. 14-00549 SOM/KSC,
2015 WL 4545818, at *3 (D. Hawai`i July 28, 2015); see also id.
at *4 (taking judicial notice of the plaintiff's Charge of

Discrimination because it is a government record, and the plaintiff did not object to the request for judicial notice).[3]

Defendants' Exhibit B consists of records maintained by the HCRC, a government entity, and Shook has not raised any dispute about the authenticity of the copies of the records included in Exhibit B, nor has he objected to this Court's consideration of Exhibit B.  See Mem. in Opp. at 18 (citing Exh. B to Motion).  This Court therefore takes judicial notice of the records in Defendants' Exhibit B, pursuant to Fed. R. Evid. 201, as evidence of the existence of Shook's HCRC proceeding.  This Court does not consider the records in Exhibit B as evidence establishing the truth of the matters described in those records.  See Lee, 250 F.3d at 690.  This judicial notice does not convert Defendant's Motion into a motion for summary judgment.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

The HCRC transmittal letter states Shook's Pre-Complaint Questionnaire was submitted on June 1, 2021.  [Thomas Decl., Exh. B at PageID #: 122.]  However, Shook's declaration in support of the questionnaire is dated May 17, 2021.  [Id. at PageID #: 130.]  To the extent there is a dispute as to when

---

[3] Bartolotti filed her charge with the Equal Employment Opportunity Commission and the HCRC.  Bartolotti, 2015 WL 4545818, at *2.

Shook submitted his HCRC questionnaire, it is not necessary for
this Court to resolve the dispute because the outcome would be
the same using either date.  Shook asserts in the questionnaire
that the last date of discrimination was April 26, 2021, *i.e.*
the date he received the MAB Decision.  See id. at PageID
#: 124.  However, for the same reasons set forth as to Shook's
negligence claim and IIED claim, the MAB hearing and the MAB
Decision are not part of a pattern of discrimination and
retaliation that includes his disqualification.  Thus, Shook was
required to file his HCRC complaint within 180 days of his
disqualification from the ninety-second HPD recruit class, which
occurred no later than February 3, 2020.  Because Shook failed
to do so, his § 378-2 claim based on his disqualification is
untimely and must be dismissed.

**B.**   **Shook's Claims Based on Post-Disqualification Events**

Shook also argues that, even if his claims based on
his disqualification are time-barred, he can assert separate,
timely claims based on Defendants' actions and omissions after
he was notified of his disqualification, including Reyes's and
Grouns's testimony at the MAB hearing and Shook's receipt of the
MAB Decision.

**1.**   **Section 1983 Claim**

In order to state a claim against a
government employer for violation of the First
Amendment, an employee must show (1) that he or

18

> she engaged in protected speech; (2) that the
> employer took "adverse employment action"; and
> (3) that his or her speech was a "substantial or
> motivating" factor for the adverse employment
> action. . . .

Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003).

As discussed above, Shook alleges he engaged in protected speech

prior to his formal notification of his disqualification - he

utilized multiple avenues to challenge what he believed were

discriminatory attempts to force him out of the recruit class.

See, e.g., Complaint at ¶¶ 40, 43, 45.  He also alleges his

protected activity was a factor in his ultimate disqualification

from the ninety-second HPD recruit class.  See, e.g., id. at

¶¶ 82-83.  Thus, this Court must determine whether the allegedly

false testimony constitutes an adverse employment action for

purposes of Shook's First Amendment retaliation claim.

> To constitute an adverse employment action,
> a government act of retaliation need not be
> severe and it need not be of a certain kind.  Nor
> does it matter whether an act of retaliation is
> in the form of the removal of a benefit or the
> imposition of a burden. . . .  As we stated in
> [Thomas v.] Carpenter, the relevant inquiry is
> whether the state had taken "action designed to
> retaliate against and chill political
> expression."  881 F.2d [828,] 829 [(9th Cir.
> 1989)] (quoting Gibson v. United States, 781 F.2d
> 1334, 1338 (9th Cir. 1986)).  Or, as we had
> earlier stated in Allen [v. Scribner], the
> inquiry is whether "the exercise of the first
> amendment rights was deterred" by the government
> employer's action.  812 F.2d [426,] 434 n.17
> [(9th Cir. 1987)].

Coszalter, 320 F.3d at 975.

In the context of a First Amendment retaliation claim based on the denial of a prisoner's grievance, a district court within the Ninth Circuit has stated:

> An adverse action does not have to constitute an independent constitutional violation, but it does have to constitute more than minimal harm. . . .  [T]he denial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of "ordinary firmness" from further First Amendment activities. Martin v. Woodford, No. 1:08-cv-00415-LJO-DLB (PC), 2009 WL 30300, at *6, 2009 U.S. Dist. LEXIS 1275, at *18 (E.D. Cal. Jan. 6, 2009) (adopted in full Feb. 27, 20095) ("Merely by [sic] ruling against Plaintiff in a grievance procedure is not sufficient to allege an adverse action."); Burgos v. Canino, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009) ("The mere denial of grievances does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights."); Frazier v. Zavaras, No. 10-cv-02534-CMA-KMT, 2011 WL 4537001, at *9, 2011 U.S. Dist. LEXIS 112951, at *30 (D. Colo. Sept.30, 2011) (plaintiff's retaliation claims failed "because denial of an administrative grievance is not an 'adverse action'"); Jenkins v. Tennessee Dept. of Corr., No. 1:14-0053, 2015 WL 1893378, at *6, 2015 U.S. Dist. LEXIS 54748, at *13-14 (M.D. Tenn. Apr. 27, 2015) (adopted in full June 1, 2015) (improper disqualification of a third level appeal is de minimis and would not deter a prisoner of "ordinary firmness" from pursing an administrative grievance); Stone v. Curtin, No. 1:11-cv-820, 2011 WL 3879505, at *4, 2011 U.S. Dist. LEXIS 98175, at *11 (W.D. Mich. Aug. 31, 2011) (failure to process grievance does not demonstrate "adverse action that would deter a person of ordinary firmness from continuing to engage in protected conduct"); Crenshaw v. Herbert, 445 F. Supp. 2d 301, 303 n.1 (W.D.N.Y. 2006) (opining without deciding as a matter of

law that denial of grievances would be de minimis
and would not constitute adverse action).

Dicey v. Hanks, No. 2:14-cv-2018 JAM AC P, 2015 WL 4879627, at
*5 (E.D. Cal. Aug. 14, 2015) (some brackets in Dicey) (footnote
omitted), *report and recommendation adopted*, 2015 WL 6163444
(Oct. 15, 2015).

This Court agrees with the analysis in Dicey and finds
it instructive in the instant case.  For similar reasons to
those articulated in Dicey, the testimony by HPD personnel about
Shook's disqualification from the ninety-second recruit class
does not constitute an administrative action, and, even if the
testimony does constitute an administrative action, the
**explanation** of Shook's disqualification does not, in itself,
rise to the level of an action that would deter a person of
ordinary firmness from engaging in similar protected activity.
Further, the issuance of the MAB Decision could not be an
adverse action by Defendants because Defendants did not issue
the Decision.

To the extent that Shook attempts to base a portion of
his § 1983 claim on events that occurred after his
disqualification, such as testimony during the MAB hearing or
the issuance of the MAB Decision, he fails to state a plausible
claim for relief.  Thus, although that portion of Shook's § 1983
claim was timely, it must be dismissed.

### 2.    **Negligence and IIED Claims**

To the extent that Shook bases his negligence claim and his IIED claim on the allegedly false testimony at the December 16, 2020 MAB hearing and on his receipt of the MAB Decision on April 26, 2021, those events occurred within the two-year limitation period, and those portions of his claims are timely.  However, Shook cannot maintain either a negligence claim or an IIED claim based on the MAB Decision because Defendants did not issue the MAB Decision.  Those portions of Counts II and III must be dismissed.

### 3.    **Section 378-2 Claim**

Shook alleges HPD personnel gave false testimony at the December 16, 2020 MAB hearing, see, e.g., Complaint at ¶ 41 (regarding Reyes), which occurred within 180 days before Shook filed his HCR complaint.  Even assuming that HPD can be held liable for the false testimony of its employees, § 378-2 does not make it a discriminatory practice for an employer to give false testimony in an administrative hearing regarding the refusal to hire an individual because of arrest and court record.  See Haw. Rev. Stat. § 378-2(a)(1)(A).  Therefore, Shook cannot maintain a § 378-2 claim based on testimony given at the MAB hearing, and that portion of Count IV must be dismissed.

Nor can Shook maintain a § 378-2 claim based on the MAB Decision because his potential employer did not issue the Decision.  That portion of Count IV must also be dismissed.

**C.**     **Summary and Whether Leave to Amend Should be Granted**

All of Shook's claims, except for the portions of Counts II and III based on the allegedly false testimony given during the MAB hearing, have been dismissed, either because the claim is untimely or because Shook otherwise cannot pursue the claim.  As to the dismissed claims, this Court concludes that it is clear that the defects cannot be cured by amendment, and therefore the dismissal must be with prejudice.  See Hoang v. Bank of Am., N.A., 910 F.3d 1096, 1102 (9th Cir. 2018) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." (quotation marks and citation omitted)).

**III. Preclusive Effect of the MAB Decision**

As to the remaining claims, this Court must address Defendants' alternate argument that dismissal is required because of the preclusive effect of the MAB Decision.

> Federal courts give preclusive effect both to legal as well as factual determinations of state administrative bodies as a matter of federal common law.  See, e.g., Miller v. Cty. of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994) (citing Univ. of Tenn. v. Elliot, 478 U.S. 788, 797-99 (1986)).  And preclusion applies to

unreviewed administrative decisions "so long as
the state proceeding satisfies the requirements
outlined in United States v. Utah Construction &
Mining Co., 384 U.S. 394, 422 (1966)." Id. at
1032-33 (quoting Guild Wineries & Distilleries v.
Whitehall Co., 853 F.2d 755, 758 (9th Cir. 1988)
(brackets and other citation omitted)).
Plaintiffs "cannot obstruct the preclusive use of
[a] state administrative decision simply by
foregoing [their] right to appeal [to state
court]." Wehrli v. Cty. of Orange, 175 F.3d 692,
694 (9th Cir. 1999) (quoting Plaine v. McCabe,
797 F.2d 713, 719 n.12 (9th Cir. 1986)).

"The fairness requirements of Utah
Construction are: (1) that the administrative
agency act in a judicial capacity, (2) that the
agency resolve disputed issues of fact properly
before it, and (3) that the parties have an
adequate opportunity to litigate." Miller, 39
F.3d at 1033 (citing Utah Constr., 384 U.S. at
422).

Conner v. Aila, Civ. No. 19-00233 JMS-KJM, 2020 WL 4208927, at

*6 n.8 (D. Hawai`i July 22, 2020) (alterations in Conner).

Based on the factual allegations in the Complaint about the MAB

proceeding and MAB documents submitted with the Motion,[4] this

Court finds that the Utah Construction requirements are

satisfied.

In addition to the Utah Construction fairness

requirements, the state law elements for res judicata or

collateral estoppel must be met.  See White v. City of Pasadena,

_____

    [4] This Court takes judicial notice of Shook's MAB appeal and
the MAB Decision, [Thomas Decl., Exhs. B, C,] based on the same
type of analysis as was set forth regarding the HCRC records.
See supra Discussion Section II.A.3.

671 F.3d 918, 926 (9th Cir. 2012) ("In determining the

preclusive effect of a state administrative decision or a state

court judgment, we follow the state's rules of preclusion."

(citing Kremer v. Chem. Const. Corp., 456 U.S. 461, 482, 102 S.

Ct. 1883, 72 L. Ed. 2d 262 (1982))); Bremer v. Weeks, 104

Hawai`i 43, 53, 85 P.3d 150, 160 (2004) (referring to "[r]es

judicata, or claim preclusion, and collateral estoppel, or issue

preclusion").  Collateral estoppel, *i.e.* issue preclusion, is

the applicable doctrine in this case.

> Collateral estoppel, also known as issue
> preclusion, bars parties or their privies from
> relitigating a particular fact or issue that was
> actually litigated and finally decided in an
> earlier action.  Dorrance v. Lee, 976 P.2d 904,
> 909 (Haw. 1999).  The following elements must be
> met for collateral estoppel to apply: "(1) the
> issue decided in the prior adjudication is
> identical with the one presented in the action in
> question, (2) there was [a] final judgment on the
> merits, and (3) the party against whom res
> judicata is asserted was a party or in privity
> with a party to the prior adjudication."  Id.

Sullivan v. Loden, Case No. 21-cv-123-DKW-RT, 2022 WL 1409567,

at *9 (D. Hawai`i May 4, 2022) (alteration in Sullivan).

Shook alleges Reyes and Grouns gave false testimony

during the MAB hearing.  The first collateral estoppel element

is satisfied because the issue of whether Reyes's and Grouns's

testimony was truthful is an issue that the MAB had to consider

in ruling on Shook's appeal.  Second, the MAB Decision is a

final judgment on the merits because Shook did not seek judicial

review of the MAB Decision.  See Haw. Admin. R. § 14-25.1-4 (stating an MAB appeal hearing "shall be conducted as a contested case under chapter 91, Hawaii Revised Statutes"); Haw. Rev. Stat. § 91-14(a) ("Any person aggrieved by a final decision and order in a contested case . . . is entitled to judicial review thereof under this chapter . . . ."). Third, Shook, the party against whom preclusion is sought, was a party in the MAB proceeding.

Because the Utah Construction fairness requirements are met and the collateral estoppel/issue preclusion requirements under Hawai`i law are met, this Court concludes that the MAB Decision has preclusive effect.  Although the MAB had the opportunity to weight the truthfulness of Reyes's and Grouns's testimony, the MAB did not find that they gave false testimony.  In light of the preclusive effect of the MAB Decision, Shook cannot pursue claims based on his allegation that Reyes and Grouns gave false testimony during the MAB hearing.  The portions of Counts II and III based on those allegations must be dismissed, and the dismissal must be with prejudice because this Court concludes that it is not possible for Shook to cure the defects in those claims by amendment.

Thus, all of the claims in Shook's Complaint have been dismissed with prejudice, and there are no remaining claims in this case.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss, filed April 28, 2022, is HEREBY GRANTED, and Shook's Complaint, filed February 9, 2022, is HEREBY DISMISSED WITH PREJUDICE.  The Clerk's Office is DIRECTED to enter judgment in favor of Defendants and close the case on **September 15, 2022,** unless Shook files a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 31, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**REED SHOOK VS. COUNTY OF HAWAII POLICE DEPARTMENT, ET AL; CV 22-00060 LEK-KJM; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**